UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
DIVISION

| | |
|---|---|
| **TAHISHA WILLIAMS-BREWER ON HER OWN BEHALF AND ON BEHALF OF HER MINOR SON, K.W.**, <br><br> Plaintiff, <br><br> vs. <br><br> **MINNEAPOLIS PARK & RECREATION BOARD OF THE CITY OF MINNEAPOLIS, MINNEAPOLIS PARK POLICE OFFICER KEITH ROWLAND** (in his individual and official capacity), **AND MINNEAPOLIS PARK POLICE OFFICER JAMES CANNON** (in his individual and official capacity). <br><br> Defendants. | Court File No. <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL REQUESTED** |

Plaintiff, by her attorney, The Law Firm of Stephen L. Smith, PLLC, brings this action seeking relief from defendants' unlawful practices, stating the following as her claims against defendants.

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under the Civil Rights Act of 1871, Title 42, Section 1983 to redress and enjoin the illegal practices alleged in this Complaint. This Court also has supplemental jurisdiction over plaintiff's state law claim pursuant to Title 28, United States Code, Section 1367.

2. Venue is proper in the District of Minnesota because defendants Minneapolis Park & Recreation Board of the City of Minneapolis is located in this district; the Minneapolis Park Police defendants are employed in this district; and the incidents in question occurred in this district.

## PARTIES

3. Plaintiff Tahisha Williams-Brewer ("Williams-Brewer") is the mother and caretaker of K.W. She is African-American and has been a resident of Minneapolis at all times relevant to this matter.

4. K.W. is the minor son of Williams-Brewer. He is African-American and has lived with his mother in Minneapolis at all times relevant to this matter.

5. Defendant Minneapolis Park and Recreation Board of the City of Minneapolis ("Minneapolis Park and Recreation Board") is designated in the City's charter as a department of the City. Notwithstanding this designation, it is a semi-autonomous entity empowered by the City's charter with direct control over the Minneapolis Park Police.

6. Defendant Keith Rowland ("Rowland") was a police officer with the Minneapolis Park Police Department at all times relevant to this matter.

7. Defendant James Cannon ("Cannon") was a police officer with the Minneapolis Park Police Department at all times relevant to this matter.

## FACTUAL ALLEGATIONS

8. Twelve-year-old K.W. was at Creekview Park in Minneapolis, Minnesota with two of his friends on May 20, 2009.

9. While the boys were in the recreation center purchasing snacks, an adult male staff member stated to K.W., "You're gay." K.W. responded in kind. The boys then got their backpacks and walked out of the recreation center toward the skateboard park.

10. K.W. later returned to the center to play in the gym. The same adult staff member him and his friends to leave the recreation center. When K.W. questioned why they had to leave, the staff member stated, "Because you're irritating me." K.W. told the staff member that was no reason to have to leave the center. The staff person then stated, "Either you leave or I am going to call the police." K.W. encouraged him to do so, indicating that the police would understand that the staff person was being unreasonable. K.W. and his friends then went into the gym; at which point, the staff person yelled, "Get out! Get out now!" and pushed K.W. out the door.

11. K.W. skated over to the front door and told his nine-year-old cousin he thought it was best they leave. As K.W. was about to leave the park, Officers Rowland and Cannon approached him. Even though he was leaving, he told the officers he shouldn't have to because he didn't do anything. He explained that the staff person called him "gay" and he responded in kind.

12. The officers immediately grabbed K.W. by his back pack and one of them stated, "This is not a debate. This is not optional. You leave the park."

13. As K.W. tried to turn around to look at the officers, they each grabbed him by an arm, releasing his back pack. They pulled K.W. by his arms, as he yelled for the officers to release him. One of the officers then forcefully twisted K.W.s' left arm and pulled it behind his back. K.W. heard and felt an immediate "snap" in his left upper arm.

14. The officers released K.W., and he fell to the ground; at which point, K.W. began yelling for help.

15. A woman at the park with her grandson witnessed the incident. She yelled at the officers that he was "just a kid" and questioned why they handled K.W. so aggressively. The officers threatened to take her to jail.

16. When another of K.W.s' young cousins present at the park questioned the officers' actions, one of the officers grabbed him and pushed him into a pole. He fell to the ground, crying.

17. Eventually, Warren Brewer ("Brewer"), K.W.'s father, arrived at the scene. He instructed the paramedics, who had arrived shortly before him, to take his son to North Memorial Hospital.

18. When Williams-Brewer was notified of the incident involving her son, she was terrified because the situation felt like déjà vu. Four years earlier, Minneapolis Police Officer Scott Mars had shot and killed her fifteen-year-old son..

19. When Brewer and Williams-Brewer arrived at the hospital, Rowland and Cannon were standing outside of K.W.s' hospital room door.

20. As Williams-Brewer entered the room, the officers insisted on speaking with her first. When she told them she wanted to see her son before speaking with them, they threatened to arrest her if she did not leave the room to speak with them. As the officers continued to escalate the situation, a nurse called security and the officers were asked to leave the room.

21. Among other things, Williams-Brewer attempted to file a complaint with Sergeant Rick Doll ("Doll") of the Minneapolis Park Police. Doll advised Williams-Brewer to write a letter to the Captain. He also volunteered that the police have the right to use force as they see fit, and that if K.W. didn't have a big mouth, he may not have gotten a broken arm.

4

22. K.W. sustained four fractures in his left humerus.

## COUNT I

**UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT AND THE CIVIL RIGHTS ACT OF 1871, TITLE 42 UNITED STATES CODE, SECTION 1983.**

23. Williams-Brewer on behalf of her son restates and realleges the foregoing paragraphs as though set forth here in full.

24. The conduct described above will establish that Rowland and Cannon, in their individual capacity, violated K.W.'s Fourth Amendment rights by using excessive force to seize him.

25. Rowland and Cannon, acting under color of state law, deprived K.W. of his constitutional rights guaranteed by the Fourth Amendment. By this conduct, they violated the Civil Rights Act of 1871, 42 United States Code, Section 1983.

26. K.W. is entitled to recover all amounts owing under the Civil Rights Act of 1871, 42 United States Code, Section 1983.

27. Rowland and Cannon's conduct was intentional, deliberate, willful, and conducted in callous disregard of, and gross indifference to K.W.'s constitutional rights.

28. By reason of their unlawful conduct described above, K.W. has suffered embarrassment, emotional distress, humiliation, loss, and indignity.

29. K.W. is entitled to recover all amounts owing under the Civil Rights Act of 1871, 42 United States Code, Section 1983, including liquidated damages against Rowland and Cannon in their individual capacity for willful violation of this law.

## COUNT II

**BATTERY**

30. Plaintiff Williams-Brewer restates and realleges the foregoing paragraphs as though set forth here in full.

31. Defendants Rowland and Cannon engaged in intentional physical contact with K.W. that was offensive and unwelcome. This intentional, offensive touching constitutes a battery.

32. K.W. has sustained injuries as a direct and proximate result of Rowland and Cannon's conduct. Plaintiff is entitled to relief.

### COUNT III

### RACE DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

33. Plaintiff Williams-Brewer restates and realleges the foregoing paragraphs as though set forth here in full.

34. The conduct described above will establish that defendants Rowland and Cannon, in their individual and official capacity, discriminated against K.W. in the area of public services on the basis of his race.

35. Their conduct was so at variance with what reasonably would have been anticipated that race discrimination is the most likely explanation for it.

36. Rowland and Cannon's discriminatory conduct was intentional, deliberate, willful, and conducted in callous disregard of and gross indifference to K.W.s' rights.

37. By reason of the conduct described above, K.W. has suffered discrimination, embarrassment, emotional distress, humiliation, indignity, injury, and loss.

38. Plaintiff is entitled to recover all amounts owing under the Human Rights Act, including liquidated damages for Rowland and Cannon's willful violation of this law.

## COUNT IV

## NEGLIGENCE

39. Williams-Brewer, on behalf of her minor son, K.W., restates and realleges the foregoing paragraphs as though set forth here in full.

40. Rowland and Cannon seized K.W. in a manner that was negligent, careless, reckless and illegal.

41. The officers' negligent conduct directly and proximately resulted in K.W.'s physical injuries and attendant medical expenses.

42. Plaintiff is entitled to relief.

## COUNT V

## MEDICAL EXPENSES AND LOSS OF SERVICES

43. Williams-Brewer, on her own behalf, restates and realleges the foregoing paragraphs as though set forth here in full.

44. Williams-Brewer, as plaintiff's parent and legal guardian, has incurred reasonable medical expenses in connection with the treatment and care of plaintiff's injuries.

45. As a result of defendants' conduct, K.W. sustained injuries that have deprived Williams-Brewer of his earnings, contributions, and services.

46. Williams-Brewer is entitled to relief.

## COUNT VI

## VICARIOUS LIABILITY

47. Plaintiff Williams-Brewer, on behalf of herself and her son, restates and realleges the foregoing paragraphs as though set forth here in full.

48. The Minneapolis Park and Recreation Board is liable for its police officers' discriminatory conduct under the Minnesota Human Rights Act, as well as for the officers' tortious conduct, because they were acting within the scope of their employment when they caused K.W.s' injuries.

49. Plaintiffs do not claim that the Minneapolis Park and Recreation Board is liable for the officers' constitutional violations.

50. The officers' conduct occurred during working hours while conducting official business.

51. The officers' illegal conduct during the course and scope of their employment is imputable to the Minneapolis Park and Recreation Board as its agents under the vicarious liability doctrine.

## **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff prays for the following:

52. That the practices of the officers in their individual capacity complained of herein be adjudged in violation of the rights secured by plaintiff K.W. under the Fourth Amendment.

53. That the practices of the officers in their official and individual capacity complained of herein be adjudged in violation of the rights secured by plaintiff K.W. under the Minnesota Human Rights Act.

54. That the Minneapolis Park and Recreation Board be vicariously liable for its officers' conduct adjudged in violation of the Minnesota Human Rights Act.

55. That the Minneapolis Park and Recreation Board be vicariously liable for its officers' tortuous conduct.

56. That a permanent injunction be issued prohibiting the officers from engaging in unreasonable seizures in violation of the Fourth Amendment.

57. That plaintiffs be awarded compensatory damages in an amount to be established at trial.

58. That plaintiff K.W. be awarded damages for mental anguish, pain and suffering in an amount to be established at trial.

59. That plaintiff K.W. be awarded punitive damages against the officers in their individual and official capacity under the Minnesota Human Rights Act.

60. That plaintiff be awarded punitive damages against the officers in their individual capacity under the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

61. That the Court award plaintiff his attorney's fees and the costs and expenses of this action.

62. That the Court award such other and further relief as it may deem just and equitable in the premises.

Dated: December 7, 2009                                    *The Law Firm of Stephen L. Smith, PLLC*

                                                                       s/Stephen L. Smith
Stephen L. Smith, #190445
Toni M. Lee, #0341101
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
Telephone: 612.305.4355

ATTORNEYS FOR PLAINTIFFS