UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| TAHISHA WILLIAMS-BREWER, *on her behalf and on behalf of her minor son*, K.W., <br><br>           Plaintiff, <br><br> v. <br><br> MINNEAPOLIS PARK & RECREATION BOARD OF THE CITY OF MINNEAPOLIS; OFFICER KEITH ROWLAND, *Minneapolis Park Police, in his individual and official capacity*; and OFFICER JAMES CANNON, *Minneapolis Park Police, in his individual and official capacity*, <br><br>           Defendants. | Civil No. 09-3524 (JRT/JJG) <br><br><br> **MEMORANDUM OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT** |

Stephen L. Smith, **LAW FIRM OF STEPHEN L. SMITH, PLLC**, 10 South Fifth Street, Suite 700, Minneapolis, MN 55402; and Toni M. Lee, **THE ADVOCATE LAW FIRM, LLC**, P.O. Box 2424, Minneapolis, MN 55402, for plaintiff.

Ann E. Walther and Karin E. Peterson, **RICE MICHELS & WALTHER LLP**, 10 Second Street Northeast, Suite 206, Minneapolis, MN 55413, for defendants.

This case involves the arrest of a twelve year old boy, K.W., from a Minneapolis Park building during which the arresting officers, Keith Rowland and James Cannon, broke the boys' arm. K.W.'s mother, plaintiff Tahisha Williams-Brewer, brought a six-count claim against the Minneapolis Park and Recreation Board ("MPRB"), Rowland, and Cannon (collectively, "defendants"). Defendants move for summary judgment on

three claims: race discrimination, negligence, and medical expenses and loss of services. Because the Court finds the plaintiff has not presented sufficient evidence that race was a factor in the officers' actions, a claim of negligence cannot defeat official immunity for acts of discretion, and plaintiff expressly abandoned the medical expenses and loss of services claim, the Court grants partial summary judgment to defendants.

## BACKGROUND

On May 20, 2009, K.W. was at Creekview Park engaged in play with friends that led the park staff to ask K.W. to leave, which he did. (Aff. of Ann Walther, Mar. 7, 2011, Ex. 1 at 18-19, Docket No. 14.) No acts of violence or property damage were involved. (*Id.*) Shortly after leaving, K.W. returned to the park building. (*Id.* at 22.) At that point, park staff called the police to remove K.W. from the building. (*Id.* at 26.) K.W. continued to enter and exit the building and at one point bought a sucker which he was eating when Rowland and Cannon arrived. (*Id.* at 34-38.) K.W. alleges that Rowland and Cannon grabbed the sucker from his mouth and threw it to the ground, then lifted him by the arms to remove him from the building such that only his toes were touching the ground. (*Id.* at 38-41.) Just as Rowland and Cannon moved K.W. outside the building, K.W.'s arm was fractured by the manner in which the officers were removing him. (*Id.* at 43-44.)

At the time K.W.'s arm was fractured, Rowland and Cannon had both his arms behind his back in what they call an "escort hold." (*Id.* Ex. 2 at 24.) Cannon describes an escort hold as a procedure where the officer "place[s] one hand on the wrist and then

the other above the elbow in order to attempt to gain control [of a person]." (*Id.* at 9.) In this position, an officer "appl[ies] pressure to the elbow to . . . keep that arm straight and guide the person . . . ." (*Id.*) Cannon states they asked K.W. only once to leave the building before placing him in the escort hold. (*Id.* at 18-19.) Cannon claims that K.W. was "twisting and pulling" and arguing that he did not have to leave. (*Id.* at 20.) Cannon states that his reason for removing the sucker from K.W.'s mouth was to prevent him from choking. (*Id.* at 22.)

Williams-Brewer brought suit against defendants alleging unreasonable seizure under the Fourth Amendment, common law battery, race discrimination in violation of the Minnesota Human Rights Act ("MHRA"), negligence, medical expenses and loss of services, and vicarious liability. Defendants moved for partial summary judgment on the MHRA, negligence, and medical expenses and loss of services claims.

## ANALYSIS

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. OFFICIAL IMMUNITY AND NEGLIGENCE

Minnesota common law on official immunity provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice Cnty.*, 423 N.W.2d 671, 677 (Minn. 1988) (quoting *Susla v. State*, 247 N.W.2d 907, 912 (1976)). "[O]fficial immunity does not protect officials when they are charged with the execution of ministerial, rather than discretionary, functions, that is, where 'independent action' is neither required nor desired." *Anderson v. Anoka Hennepin Indep. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). An official performing a ministerial duty can be liable in negligence. *Id.* at 660.

However, if an act is discretionary, official immunity protects the officer from liability in negligence. *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 506-07 (Minn. 2006) (finding a grader operator entitled to official immunity for driving against traffic because it was a discretionary act but not for leaving his lights off at night since that was ministerial). "Police officers are generally classified as discretionary officers entitled to official immunity." *Maras v. City of Brainerd*, 502 N.W.2d 69, 77 (Minn. Ct. App. 1993) (citing *Johnson v. Morris*, 453 N.W.2d 31, 42 (Minn. 1990)). This designation is particularly appropriate in stop and arrest scenarios. "[T]he conduct of police officers in responding to a dispatch or making an arrest involves precisely the type of discretionary

decisions, often split-second and on meager information, that we intended to protect from judicial second-guessing through the doctrine of official immunity." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 665 (Minn. 1999). Therefore, since the arrest of K.W. was a discretionary act, the officers are entitled to official immunity on a negligence claim for their actions in effectuating the arrest. This determination, however, has no bearing on other claims in the complaint since an officer's official immunity can be overcome for some actions during an arrest, such as for the use of excessive force. *See, e.g.*, *Brown v. City of Golden Valley*, 574 F.3d 491, 501 (8th Cir. 2009). The Court grants summary judgment on the negligence claims against Rowland and Cannon.

The question of whether municipalities – in this case the MPRB – should benefit from their employees' immunity is a question of public policy and dependent on the facts of each case. *Pletan v. Gaines*, 494 N.W.2d 38, 42 (Minn. 1992). In cases involving police officers, however, courts have generally found the policy implications weigh toward granting vicarious immunity since "refusing to grant the city vicarious official immunity for the same actions would necessarily require examination of the officers' actions, defeating the purpose of granting the officers official immunity [because of the chilling effect it would have on the officers]." *Ivory v. City of Minneapolis*, No. 02-4364, 2004 WL 1765460, at *8 (D. Minn. Aug. 4, 2004). Therefore, the Court determines that the MPRB is entitled to official immunity on the negligence claim as a consequence of the officers' immunity.

### III.     RACE DISCRIMINATION AND THE MHRA

Claims of race discrimination under the MHRA are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1124 n.2 (8th Cir. 2000). Under *McDonnell Douglas*, the plaintiff first is required to establish a prima facie case of discrimination: the burden of production then shifts to defendant to assert a legitimate reason for the allegedly discriminatory action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant is able to do so, the burden shifts back to the plaintiff to establish that the asserted legitimate reason was merely a pretext for a discriminatory action. *Id.* at 804. In order to establish a prima facie case of race discrimination, Williams-Brewer must show that K.W. "was treated differently with respect to public services than others similarly situated except for [race], or that treatment of [him] was so different from what would be expected that discrimination is the probable explanation." *Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994); Minn. Stat. § 363A.12. The defense of official immunity applies to claims brought under the MHRA. *Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994)).

Since the situation at the park involved only the removal of K.W. from the park building, there is no similarly situated individual with which to compare the officers' treatment of him. *See City of Minneapolis v. Richardson*, 239 N.W.2d 197, 202 n.5 (Minn. 1976) ("It is true also that there is no substantial empirical evidence as to how defendants treated whites, or that they treated them differently than blacks; that is, there

is no measuring stick in that sense against which to judge whether defendants' conduct was discriminatory[.]" (internal quotation marks omitted)).

As a result, Williams-Brewer must show that the officers' conduct was "so at variance" with what would reasonably be anticipated **absent** racial discrimination that racial discrimination is the probable explanation. *Id.* No direct evidence of racial discrimination is necessary under this standard. "The very purpose of the so-at-variance standard is to address less blatant acts of wrongful discrimination by allowing a fact finder to examine misconduct and **weigh the circumstances** to determine underlying motives by indirect evidence." *Minneapolis Police Dept. v. Kelly*, 776 N.W.2d 760, 768 (Minn. Ct. App. 2010) (emphasis added). "In applying the [so-at-variance] standard, the totality of the circumstances surrounding the alleged discriminatory conduct must be examined." *Beaulieu*, 518 N.W.2d at 572.

The substance of Williams-Brewer's allegation is that the officers treated K.W. as they did because he is black. However, Williams-Brewer provides no admissible evidence[1] that Rowland and Cannon, in this circumstance, made any racial statements or otherwise were motivated by a discriminatory animus. Regardless of whether the officers' actions were improper, something more is needed to make a claim under the MHRA. *O'Neal v. Moore*, No. 06-2336, 2008 WL 4417327, at *22 (D. Minn. Sept. 24,

---

[1] Williams-Brewer provides evidence that Rowland previously injured a black child and the City settled the claim. However, this evidence is not admissible to show behavior in conformity under Federal Rule of Evidence 404(b). "Inadmissible evidence cannot overcome a motion for summary judgment." *Nokes v. U.S. Coast Guard*, 282 F. Supp. 2d 1085, 1089 (D. Minn. 2003).

2008) ("Other than merely claiming that defendants discriminated against him, plaintiff submitted no evidence to establish that his race, color, religion or disability was a factor in defendants' alleged wrongful conduct."). As one court noted:

> The best that [plaintiff] can point to in support of his claim is that the quantum of force used by the officers in effecting his arrest was excessive. In the Court's view, this fact, standing alone, simply cannot mean that the officers' actions were undertaken on account of [plaintiff's] race. Indeed, were that the case, any use of excessive force would amount to a *per se* violation of the MHRA. Moreover, . . . [plaintiff] has presented no evidence that Defendants used racial epithets or other racially derogatory remarks.

*Hixon v. City of Golden Valley*, No. 06-1548, 2007 WL 1655831, at *11 (D. Minn. June 7, 2007). As a result, the Court grants defendants summary judgment on the MHRA claim.

## IV. MEDICAL EXPENSES AND LOSS OF SERVICES

Williams-Brewer explicitly abandoned the claim for medical expenses and loss of service in her opposition memorandum (Mem. in Opp'n at 9 n.6, Docket No. 16), and reiterated this position at the hearing on the motion. Abandonment of a claim is sufficient grounds for granting summary judgment. *See, e.g.*, *A.C. ex rel. M.C. v. Indep. Sch. Dist. No. 152*, No. 06-3099, 2006 WL 3227768, at *4 (D. Minn. Nov. 7, 2006). As a result, the Court grants defendants summary judgment on this claim.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion for Partial Summary Judgment [Docket No. 10] is **GRANTED.**

DATED: August 15, 2011                _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.             JOHN R. TUNHEIM
                                                      United States District Judge